IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY LEE STEWART, SR.,

                      Plaintiff,

    v.

OFFICER WILEY, OFFICER DOBROWSKI,
OFFICER DANIELSON,
OFFICER HANSON, OFFICER O'LEARY,
POLICE CHIEF DAVID MOORE,
DEPUTY CHIEF SHERIDAN,
DEPUTY CHIEF KLIESNER,
and DEPUTY CHIEF PEARSON,

                      Defendants.

OPINION and ORDER

22-cv-482-jdp

---

Plaintiff Timothy Lee Stewart, proceeding without counsel, brings Fourth and Fourteenth Amendment claims against various members of the Janesville Police Department for repeatedly citing or arresting him based on complaints of criminal activity that they know are false. In particular, I granted Stewart leave to proceed on claims about the following events:

- In August 2021, he was arrested after defendant Officer Wiley filed a police report stating that his neighbor Andrew Banks accused him of threatening to shoot Banks's vehicle windows.

- In November 2021, defendant Officers Dobrowski and Danielson issued him a disorderly conduct citation after Banks and another neighbor accused him of "chas[ing] down some unknown [person]" and threatening to kill him. Dkt. 9, at 6.

- In January 2022, defendant Officers Hanson and O'Leary stopped him and issued him a disorderly conduct citation for a noise violation.

Dkt. 10, at 2–3; Dkt. 75, at 2 (dismissing a fourth set of claims that Stewart was already bringing in another case). I also allowed Stewart to proceed on claims that police department leadership failed to intervene to stop this practice.

Defendants move for summary judgment. Dkt. 58. I will grant this motion and dismiss the case because defendants had at least arguable probable cause to cite or arrest Stewart in each of these incidents and because Stewart provides no evidence suggesting that there was a practice of falsely citing or arresting him or that defendants were aware of such a practice. Defendants move for sanctions against Stewart for filing a frivolous lawsuit, Dkt 59, which I will deny.

UNDISPUTED FACTS

In my previous order I stated that Stewart did not properly respond to defendants' proposed findings of fact, even after I directed him to file a response complying with this court's procedures for briefing summary judgment motions. Dkt. 85, at 2. I will consider defendants' proposed findings undisputed so long as they are consistent with the video footage that they have provided for each incident. *Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 348–49 (7th Cir. 2020) (district court may accept a party's proposed findings of fact as undisputed if the opposing party doesn't dispute them).

I also noted that there might be more video footage available than defendants had disclosed to Stewart or submitted to the court. *Id.* at 3. I directed defendants to submit to the court and Stewart (1) all the videos it has from the three incidents at issue; (2) a copy of the department's bodycam retention policy; and (3) declarations detailing the efforts undertaken by staff to retrieve the bodycam footage for the three incidents at issue in this case and explaining why any particular officer's bodycam footage is not available. *Id.* Defendants have done so. *See* Dkts. 87–92. I'm satisfied from defendants' response that they did not fail to disclose any footage helpful to Stewart. But I remind them of their duty in Stewart's remaining

2

open cases to respond to Stewart's discovery requests for video by disclosing all relevant footage.

### A. Parties

At the time of the relevant events, plaintiff Timothy Stewart lived in Janesville. Defendants worked for the Janesville Police Department: David Moore was the chief; Terrance Sheridan, Todd Kleisner, and Chad Pearson were deputy chiefs; and Jeremy Wiley, Charli Dobrowski, Bruce Danielson, Daniel Hanson, and Timothy O'Leary were officers.

### B. August 7, 2021

Defendant Officer Wiley received a call from police dispatch stating that Stephanie Taylor had called in to report that Stewart was beating a dog in the parking lot on West Court Street in Janesville. Wiley ran a background check on Stewart, which revealed that Stewart had an outstanding arrest warrant issued by the Wisconsin Department of Corrections for a parole violation. Pursuant to the warrant, Wiley and non-defendant Victoria Dawson arrived at the parking lot and arrested Stewart. Video of the incident confirms that the officers arrested Stewart because of the DOC warrant. *See* Dkt. 87-6, 87-7, and 87-8 (placeholder entries for footage from that incident).

### C. November 28, 2021

Defendant Officer Dobrowski received a call from dispatch stating that Andrew Banks called the police about Stewart, who was Banks's upstairs neighbor. Banks reported that Stewart ran down the stairs and yelled, "I'm gonna beat you." Dkt. 63, ¶ 5. Banks then watched Stewart chase after a man who drove away in a car.

At the time, Dobrowski was in field training with defendant Officer Danielson acting as her "backup officer." Dobrowski and Danielson were dispatched to Banks's and Stewart's building. Non-defendant Justin Popovich also came to the scene.

The officers arrived at around 11:00 p.m. Stewart was at his second-story window and refused to come outside to speak with the officers. Dobrowski's police report states that she spoke with Banks, who reiterated that she saw Stewart run down the stairs yelling "I'm gonna beat you," Dkt. 87-4, at 5, and then chase the man down the street.[1]

Dobrowski's bodycam footage shows the officers asking Stewart questions as he stood in his window. Dkt. 63-3 (placeholder entry for footage from that incident). Stewart stated that he came outside in response to the man looking at him from his car. *Id.* Stewart denied threatening the man or otherwise having an argument with him. *Id.* Popovich stated that Stewart was getting a citation for disturbing the peace. *Id.* Dobrowski left a disorderly conduct citation at Stewart's door.

**D. January 2, 2022**

Defendant Officer O'Leary got a call from dispatch stating that Andrew Banks had called to complain that Stewart was outside the door of their building, screaming. Dispatch stated that on that call they could hear a man shouting in the background.

O'Leary got to the residence about seven minutes later. He stood outside and spoke with both Banks and another neighbor, Cherie Thompson, by phone. Stewart was not at the scene.

---

[1] From the parties' filings I take them to be saying that Banks is a transgender woman. So I will use feminine pronouns to refer to Banks.

Banks said that Stewart had been shouting on their front porch, and when Banks told him to be quiet, Stewart told him to "shut the fuck up." Dkt. 66, ¶ 9. Thompson told O'Leary that she was startled when Stewart began shouting while he was on the front porch. Thompson described Stewart as yelling at the top of his lungs; she could not understand what he was shouting.

O'Leary concluded that there was probable cause to issue Stewart a citation for disorderly conduct. He instructed defendant Officer Hanson to find Stewart and issue him a citation. Hanson found Stewart at a nearby gas station.

Hanson's bodycam footage shows the discussion that he had with Stewart. Dkt. 67-5 (placeholder entry for footage from that incident). The parties briefly discussed some litigation between Stewart and Banks; I take Hanson to be saying that he had recently unsuccessfully attempted to serve a restraining order on Banks. *Id.* Stewart explained that he was not yelling at Banks, but that he was singing to his religious pictures that were outside of the residence and recording a video. *Id.* Stewart mentioned that at some point earlier, Banks broke a picture of his, Stewart called the police, and Wiley didn't cite Banks. *Id.* Hanson issued Stewart a citation for disorderly conduct. *Id.*

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Stewart contends that for each of the three incidents, defendant officers cited or arrested him for complaints of criminal activity that they knew were false, and that defendant supervisors never properly responded to his complaints about false citations or arrests by investigating the issue or putting a stop to the practice. Defendants seek summary judgment

5

on the grounds that they didn't violate the Constitution, and, even if they did, they are entitled to qualified immunity.

**A. Claims against officers**

I'll start with Stewart's claims against the officers involved in each of the three incidents. Stewart brings claims under both Fourth Amendment and Fourteenth Amendment equal protection "class of one" theories.

The Fourth Amendment bars "unreasonable searches and seizures." A Fourth Amendment seizure of a person occurs when officers, through physical force or a show of authority, restrain a person's liberty. *Hawkins v. Mitchell,* 756 F.3d 983, 992 (7th Cir. 2014). An arrest is reasonable if it is supported by probable cause. *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020). Probable cause exists "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). And even if any of the defendants did not detain or arrest Stewart themselves, the United States Supreme Court has recognized a Fourth Amendment claim for malicious prosecution when a defendant's actions cause the plaintiff to be seized without probable cause. *Thompson v. Clark*, 596 U.S. 36, 42 (2022). A brief detention for investigatory purposes is reasonable if supported by a less stringent standard of reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968).

Stewart also alleges contends that defendants singled him out in a discriminatory way by continuing to falsely arrest or cite him without probable cause. A plaintiff may bring a Fourteenth Amendment "class-of-one" equal protection claim for being treated "intentionally . . . differently from others similarly situated" for no rational reason. *D.S. v. E. Porter Cty. Sch.*

*Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). In cases involving police enforcement of laws, this requires the plaintiff to show that defendants had an improper motive. *See Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) ("[T]he police exercised the broad discretion that custom gives them in enforcing minor public nuisance laws, in favor of the neighbors. For all we know, they did so simply because the neighbors were always in the right and Hilton always in the wrong. But maybe not; maybe the Wheeling police are inept, or have been deceived by the neighbors. It doesn't matter; what matters is the absence of evidence of an improper motive.").

Under the doctrine of qualified immunity, a plaintiff may not obtain damages from a defendant for a constitutional violation unless the plaintiff shows not only that the defendant violated his rights, but also that his rights were clearly established at the relevant time. The plaintiff can meet this burden by pointing to either: (1) a closely analogous, binding case that was decided in his favor; (2) a more general constitutional rule that applies "with obvious clarity" to the defendant's conduct. *Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021). In deciding whether the defendants are entitled to qualified immunity on a motion for summary judgment, the court must view the evidence in the light most favorable to the plaintiff and ask whether a reasonable jury could find that the defendants violated the plaintiff's clearly established rights. *Jerger v. Blaize*, 41 F.4th 910, 913 (7th Cir. 2022); *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017).

1. **August 7, 2021**

Stewart contends that defendant Officer Wiley didn't have probable cause to arrest him on this date. In his complaint, Stewart alleged that Wiley arrested him on August 7, 2021, after receiving a false police report from Andrew Banks and Olivia Chase stating that Stewart

7

had threatened to shoot out the windows of Banks's van. Dkt. 9, at 8–9. But at summary judgment, Stewart doesn't submit proposed findings of fact or evidence supporting those allegations. Rather, defendants' undisputed findings of fact show a different reason for Stewart's arrest. Defendant Wiley states that he responded to a call from Stephanie Taylor that Stewart was beating a dog, and in doing so became aware that Stewart had an outstanding arrest warrant for a parole violation issued by the DOC. Wiley arrested Stewart pursuant to the warrant.

Generally, officers do not violate the Fourth Amendment by arresting someone pursuant to a warrant. *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013). Exceptions exist where the warrant isn't facially valid or the arresting officer knows that the warrant was issued without probable cause (or, as is the case here, reasonable suspicion of a parole violation). *See id.* at 441–42; *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) (addressing the reasonable suspicion standard for parole violations). The warrant here appears facially valid, *see* Dkt. 61-1, and Stewart doesn't present any evidence suggesting that these exceptions apply.

Stewart has a similar problem with his Fourteenth Amendment class-of-one claim about this arrest. Wiley had a proper justification for the arrest. Stewart doesn't submit any evidence suggesting that he was treated any differently than anyone else with an outstanding warrant. So I will grant defendants' motion for summary judgment on Stewart's claims against Wiley.

**2. November 28, 2021**

Stewart contends that defendant Officers Dobrowski and Danielson violated his Fourth and Fourteenth Amendment rights by citing him after Banks and another neighbor falsely accused him of chasing down an unknown person in his car and threatening to kill him.

In their undisputed proposed findings, defendants do not state that they relied on multiple eyewitnesses. Instead, they state that they cited Stewart for disorderly conduct after being notified of a call from Banks alone, responding to the scene, and talking to Banks and Stewart separately.

Defendants first address their questioning of Stewart, with the officers standing on the street and Stewart in his second-story window. They assert that they had reasonable suspicion to detain Stewart for a *Terry* stop to discuss Banks's report. This interaction probably wasn't a seizure under the Fourth Amendment: a person in Stewart's position would have felt free to end the interaction and walk away from his window at any time. *See United States v. Smith*, 794 F.3d 681, 684 (7th Cir. 2015) ("So long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required."). But even if this was a *Terry* stop, defendants had reasonable suspicion that Stewart had committed disorderly conduct based on Banks's complaint. *United States v. Wooden*, 551 F.3d 647, 649 (7th Cir. 2008) ("the assertions of eyewitnesses to crime generally do not need corroboration, or a history of other accurate reports, to be believed.")

Then after talking with Stewart, the officers issued Stewart a citation for disorderly conduct. Probable cause "requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true." *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056–57 (7th Cir. 2011).

Wisconsin's disorderly conduct statute provides:

> (1) Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.

9

Wis. Stat. § 947.01(1). Wisconsin courts have interpreted the phrase "otherwise disorderly conduct" broadly to mean "conduct of a type not previously enumerated but similar thereto in having a tendency to disrupt good order and to provoke a disturbance." *State v. Schwebke*, 2002 WI 55, ¶ 25, 53 Wis. 2d 1, 644 N.W.2d 666 (2002) (internal quotation marks omitted).

The doctrine of qualified immunity provides an added layer of protection to law enforcement officers, allowing for reasonable mistakes in judgment. Defendants are entitled to qualified immunity on Stewart's Fourth Amendment claims if "a reasonable officer could have mistakenly believed that probable cause existed." *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 879–80 (7th Cir. 2012) (internal quotes omitted). This standard is often termed "arguable probable cause." *Id.* Arguable probable cause is established when "a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id.* at 880.

Defendants say that probable cause was established because Stewart conceded that he had left his apartment to confront and threaten the man who was looking at him. Stewart otherwise disputed Banks's account, starting that he didn't have an argument with the man, asking him only "what's up" and that the man then drove off. Stewart would have been entitled to contest all the underlying facts at trial on the disorderly conduct charge, but for purposes of the Fourth Amendment claims here, the officers on the scene could reasonably believe Banks's account. *Wooden*, 551 F.3d at 649; *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991) ("When an officer has received his information from some person—normally the putative

10

victim or an eye witness—who it seems reasonable to believe is telling the truth, he has probable cause." (internal quotation marks omitted)).[2]

Stewart contends that there was good reason for officers to disbelieve Banks. A major focus of Stewart's complaint and opposition brief is that the individual incidents in this case cannot be viewed in isolation. Rather, he believes that the Janesville Police Department has discriminated against him, in particular regarding his dealings with Banks, whom he says has made about 90 false complaints against him. Stewart states that they continue to cite or arrest him even though they know that Banks is lying. The officers' knowledge of prior false complaints by Banks could factor into the probable cause analysis because it could give the officers reason to disbelieve her. But Stewart hasn't submitted proposed findings of fact and supporting evidence substantiating any of these allegations. Courts often observe that summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Without supporting evidence, I cannot consider Stewart's allegations about police discrimination and harassment or about dozens of false complaints by Banks.

Pursuant to my May 9, 2024 order, Dkt. 85, defendants submitted Dobrowski's police report from the incident, which ends by stating, "Officers have responded to calls at this address five times between 9/2/21 and 11/28/21 for disturbances between Banks and Stewart. This

---

[2] Defendants also contend that in a later phone call with police, Stewart admitted to fighting the man outside his apartment. *See* Dkt. 65-4 (placeholder for Sergeant Benjamin Thompson's January 8, 2022 bodycam footage). Defendants don't explain how this would affect the probable cause analysis for a citation made weeks earlier. But in any event, a reasonable jury could infer from the footage that Stewart was recounting the accusations against him, not agreeing that they were true. *See id.* at 4:17–4:40. So I will not consider this footage further.

11

incident appears to be the first time any enforcement action was taken in that time frame." Dkt. 87-4, at 6. Dobrowski lists the four previous encounters, notes that Stewart had a temporary restraining order against Banks for five days in late July and early August 2021, and requests that her report "be forwarded to the chronic nuisance premises team for review." *Id.* This report appears to reflect Dobrowski's knowledge *after* the incident, but even if she was fully aware of several prior incidents between Stewart and Banks, there isn't any indication from the report that the officers should have considered Banks untrustworthy and disregarded her complaint. Defendants had at least arguable probable cause to believe that Stewart had threatened a man outside his apartment, which is enough for a disorderly conduct charge. *See State v. A.S.*, 2001 WI 48, ¶ 34, 243 Wis. 2d 173, 626 N.W.2d 712 (violent threat may tend to disrupt good order by causing the listener to be concerned about the safety of those threatened). So I will grant defendants summary judgment on Stewart's Fourth Amendment claims.

Stewart's class-of-one claims about this incident suffers from similar problems. On this record, no reasonable jury could conclude that defendants knew that Banks was lying yet intentionally falsely cited Stewart. So I will grant summary judgment to defendants on these claims as well.

### 3. January 2, 2022

Stewart contends that defendant Officers O'Leary and Hanson violated his Fourth and Fourteenth Amendment rights by stopping him and issuing him a disorderly conduct citation for a noise violation.

The evidence shows that Hanson stopped Stewart only after O'Leary had already directed Hanson to issue Stewart a citation. So I won't analyze Hanson's stop separately. I'll

address under the probable cause standard (1) O'Leary's decision to direct Hanson to cite Stewart; and (2) Hanson's decision to follow through on citing Stewart after hearing Stewart's version of events.

Without speaking to Stewart, O'Leary decided to have Hanson cite Stewart for disorderly conduct. But he did speak with both Banks and Cherie Thompson, whose stories corroborated each other. And dispatch told O'Leary that they could hear a man screaming in the background, providing further corroboration. The witnesses' description that Stewart was screaming "at the top of his lungs" and that he told Banks to "shut the fuck up" when confronted about it was enough to give O'Leary at least arguable probable cause to issue him a citation for disorderly conduct.

Then, Hanson found Stewart at a nearby gas station and talked to him briefly before stating that he was issuing him a citation. Stewart gave his alternate version of events, in which Stewart was merely singing at his religious pictures. But given Banks's, Thompson's, and dispatch's corroborating stories, Hanson didn't have to believe Stewart.

The discussion also revealed Hanson's knowledge of pieces of the apparently long-running dispute between Stewart and Banks. Hanson appeared to say that he had recently unsuccessfully attempted to serve a restraining order on Banks, and Stewart told Hanson that police didn't cite Banks when Banks broke a picture of Stewart's. Dkt. 67-5. This would have given Hanson reason to discount Banks's story. But given Thompson's and dispatch's corroboration of Banks's version, he still had arguable probable cause to cite Stewart with disorderly conduct.

As for Stewart's Fourteenth Amendment claims, my conclusion that defendants had arguable probable cause for this incident as well as the August and November incidents

undermines his theory that the Janesville police are discriminating against him by repeatedly falsely citing or arresting him; he doesn't present any evidence showing that this is the case.

If Stewart instead means to base his claim on a single instance in which Wiley cited him for disorderly conduct but didn't cite Banks for destroying Stewart's property, that isn't enough to support a class-of-one claim. Stewart doesn't show that he and Banks were similarly situated: he doesn't provide any evidence detailing the circumstances of the picture-destruction incident or what information Wiley had in making a probable cause determination then. And he doesn't provide enough evidence to suggest that Wiley had an improper motive in making these determinations. *See Hilton*, 209 F.3d 1005 at 1008.

**B. Supervisory defendants**

That leaves Stewart's claims against Chief Moore and Deputy Chiefs Sheridan, Kliesner, and Pearson for failing to intervene to address Stewart being repeatedly falsely cited or arrested. These claims fail because I've already determined that defendant officers had at least arguable probable cause for the three incidents at issue in this case, and because Stewart hasn't provided any evidence suggesting that these supervisory defendants were aware of his rights being violated with regard to these incidents or the many other incidents in which he alleged that Banks falsely accused him of crimes. So I will grant summary judgment to defendants on this claim, and the entire case will be dismissed.

**C. Motion for sanctions**

Defendants move for sanctions against Stewart for bringing frivolous claims in this and other lawsuits. Dkt. 59. In particular they ask that the court require Stewart to "show cause for any future lawsuits, and that he be denied any indigency waivers for filing lawsuits." *Id.* at 23. I will deny this motion because after they filed it, I sanctioned Stewart in multiple ways in

other lawsuits. *See Stewart v. Arndt*, No. 23-cv-465-jdp, slip op. at 2–3 (Jan. 16, 2024) (barring Stewart from filing additional complaints containing baseless allegations of a conspiracy among his landlord, neighbors, and the police); *Stewart v. Severson*, No. 21-cv-555-jdp, 2024 WL 871707, at *7 (W.D. Wis. Feb. 29, 2024) (barring Stewart from bringing new lawsuits in this court without first prepaying the entire filing fee (otherwise known as filing "in forma pauperis")). Additional sanctions are unnecessary.

## ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 58, is GRANTED.

2. Defendants' motion for sanctions, Dkt. 59, is DENIED.

3. The clerk of court is directed to enter judgment accordingly and close the case.

Entered May 30, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge